**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

MARIO GOSS,

    Plaintiff,

vs.

STREAM GLOBAL SERVICES, INC.,

    Defendant.

No. C14-4033-MWB

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS**

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION AND BACKGROUND ................................................... 2*
   *A.    Factual Background .................................................................. 2*
   *B.    Procedural Background ............................................................ 3*
*II. LEGAL ANALYSIS ............................................................................ 3*
   *A.    Standards For A Motion To Dismiss .......................................... 3*
   *B.    Hostile Work Environment Claim .............................................. 6*
   *C.    Constructive Discharge Claim ................................................. 10*
   *D.    Section 1983 Claims .............................................................. 12*
   *E.    Thirteenth Amendment Claim ................................................. 16*
   *F.    Breach Of Contract ................................................................ 17*
   *G.    Leave To Amend ................................................................... 19*
*III. CONCLUSION ................................................................................ 19*

In this employment discrimination lawsuit brought *pro se*, the plaintiff-employee alleges, *inter alia*, that his former employer violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by subjecting him to a hostile work environment as a result of a single racist joke being told on his first day of training. The plaintiff-employee further alleges that the hostile work environment resulted in his constructive discharge. The employer has moved to dismiss all counts for failure to state a claim.

## I. INTRODUCTION AND BACKGROUND

### A. Factual Background

"When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Thus, the factual background presented here is based on Goss's allegations in his Complaint.

Goss worked for Stream Global Services, Inc. ("Stream") from December 3, 2012, to May 6, 2013. Goss is African-American of "Alkebulan national origin."[1] Complaint at 2. On his first day of work, December 3, 2012, during a training class, Heather Bronkhorst, a Stream manager or supervisor, walked in and stated: "'What do you call four black people driving off a cliff?' The punchline 'My friends.'" Complaint at 3. Goss found the joke unwelcome. He was "afraid, confused and frustrated" by it and "[t]his created an instant extreme hostile and intolerable work environment." Complaint at 3. Bronkhorst's motivation for the joke was Goss's race, color, and national origin. Goss later found "out I had the option to Constructive Discharge which I did in

---

[1] Alkebulan is considered by some to be the original name for the African continent and its inhabitants were referred to as Alkebulans. *See* ALKEBULAN, http://consciousplat.com (last visited Mar.13, 2015).

honor of the law." Complaint at 3. Thus, as a result of the joke, "on 5/6/13 I was constructively discharged by myself." Complaint at 7.

### B. *Procedural Background*

Goss subsequently filed a timely *pro se* Complaint alleging he was subjected to a hostile work environment because of his race, color, and national origin, resulting in his constructive discharge and breach of contract, in violation of 42 U.S.C. § 1981, the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1983, and the Thirteenth and Fourteenth Amendments of the United States Constitution. Goss seeks back pay, 60 years of front pay, and $18 million in compensatory and punitive damages. Stream has filed a motion to dismiss all of Goss's claims, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. Goss filed a response in opposition to Stream's motion to dismiss. Stream filed a reply to Goss's response.

## II. LEGAL ANALYSIS

### A. *Standards For A Motion To Dismiss*

Stream seeks dismissal of all claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). As the Eighth Circuit Court of Appeals has explained,

> We review de novo the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party. *See Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012); *see also* Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

> 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)
> (internal quotation omitted). "A claim has facial plausibility
> when the plaintiff pleads factual content that allows the court
> to draw the reasonable inference that the defendant is liable
> for the misconduct alleged." *Id.*

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012); *accord Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter*, 686 F.3d at 850); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (stating the same standards).

Courts consider "plausibility" under this *Twom-bal* standard[2] by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney*, 700 F.3d at 1128 (quoting *Iqbal*, 556 U.S. at 679). Also, courts must "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). The Eighth Circuit Court of Appeals has refused, at the pleading stage, "to incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*." *Id.* Nevertheless, the question "is not whether [the pleader] might at some later stage be able to prove [facts alleged]; the question is whether [it] has adequately

---

[2] The "*Twom-bal*" standard is my nickname for the "plausibility" pleading standard established in the United States Supreme Court's twin decisions on pleading requirements, and standards for dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for claims in federal court. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009).

4

asserted facts (as contrasted with naked legal conclusions) to support [its] claims." *Id*. at 1129. Thus,

> [w]hile this court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party," *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *[Bell Atl. Corp. v.] Twombly*, 550 U.S. [544,] 555, 127 S. Ct. 1955 [(2007)]).

*Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012); *Whitney*, 700 F.3d at 1128 (stating the same standards).

In assessing "plausibility," as required under the *Twom-bal* standard, the Eighth Circuit Court of Appeals has explained that courts "consider[ ] only the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint,'" *Whitney*, 700 F.3d at 1128 (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)), and "'materials that are part of the public record or do not contradict the complaint.'" *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999), and citing *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011)). A more complete list of the matters outside of the pleadings that the court may consider, without converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, pursuant to Rule 12(d), includes "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.'" *Miller*, 688 F.3d at 931 n.3 (quoting 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)).

Various federal Circuit Courts of Appeals have expressly recognized that, in addition to dismissal for factual implausibility, the *Twom-bal* standard still permits dismissal pursuant to Rule 12(b)(6) of a claim that lacks a cognizable legal theory. *See, e.g., Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013) (a claim may be dismissed if it is based on an "indisputably meritless legal theory"); *Commonwealth Prop. Advocates, L.L.C. v. Mortgage Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011) ("Dismissal is appropriate if the law simply affords no relief."); *see also Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (recognizing that a claim must plead sufficient facts under a "viable legal theory"). The Eighth Circuit Court of Appeals has suggested the same. *See Brown v. Mortgage Elec. Registration Sys., Inc.*, 738 F.3d 926, 933 n.7, 934 (8th Cir. 2013) (noting the appellate court's agreement "with the district court's sound reasoning that the facts pled do not state a cognizable claim under Arkansas law" and holding that dismissal pursuant to Rule 12(b)(6) was appropriate, because Arkansas law did not impose the purported duty on which an unjust enrichment claim and a state statutory claim were based).

I will apply these standards to Stream's motion to dismiss.

### B.  *Hostile Work Environment Claim*

The standards applied to evaluate a hostile work environment claim under 42 U.S.C. § 1981, are the same standards used to evaluate such a claim under Title VII. *See Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (citing *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1050 (8th Cir. 2002)); *see also Soto v. John Morrell & Co.*, 285 F. Supp.2d 1146, 1166 (N.D. Iowa 2003). In order to establish a prima facie case for a hostile work environment, Goss must show that: (1) he

is a member of a protected class; (2) he was subjected to unwelcome race-based harassment; (3) the harassment was because of his membership in the protected class; and (4) the harassment affected a term, condition, or privilege of his employment.³ *See Ellis v. Houston*, 742 F.3d 307, 319 (8th Cir. 2014); *Jackman v. Fifth Judicial Dist. Dep't of Correctional Servs.*, 728 F.3d 800, 805-06 (8th Cir. 2013); *Anderson*, 606 F.3d at 518.

"Hostile work environment harassment occurs when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Singletary v. Missouri Dep't of Corrs.*, 423 F.3d 886, 892 (8th Cir. 2005) (quoting *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 991 (8th Cir. 2003)). "The environment must be both objectively hostile as perceived by a reasonable person and subjectively abusive as actually viewed by [the plaintiff]." *Anderson*, 606 F.3d at 518 (citing *Bowen v. Missouri Dep't of Social Servs.*, 311 F.3d 878, 883 (8th Cir. 2002)); *see Ellis*, 742 F.3d at 319. In considering the objective component, courts examine the totality of the circumstances, "including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Singletary*, 423 F.3d at 893 (citing *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004)). The Eighth Circuit Court of Appeals has

---

³ When a plaintiff attempts to establish a hostile work environment based on the actions of co-workers, "he or she 'must then present evidence that the employer "knew or should have known about the harassment and failed to respond in a prompt and effective manner."'" *Anderson*, 606 F.3d at 519 (quoting *Arraleh v. County of Ramsey*, 461 F.3d 967, 969 (8th Cir. 2006) (citation omitted)).

instructed on the demanding nature of the standards required to be met in a hostile work environment claim:

> Hostile work environment claims must meet 'demanding' standards and courts are to 'filter out' those complaints concerning the 'ordinary tribulations of the workplace.' 'Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.' 'Mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate § 1981.'

*Anderson*, 606 F.3d at 519 (quotations omitted).

The Complaint mentions only Bronkhorst's racist joke in support of Goss's hostile work environment claim.[4] Stream argues that this allegation is not sufficiently severe or pervasive to support a hostile work environment claim. Goss's allegation is of a single incident of discriminatory conduct, which was not physically threatening, and did not interfere with his work performance. Taking Goss's allegation of the racial joke as true, as I must in this posture of the litigation, I find it incredibly reprehensible and offensive. It is simply beyond the pale. It is even worse because this happened on Mr. Goss's first day of work, in a training session by a manager or supervisor. If I were not constrained by precedent and writing on a clean slate I would likely find this single incident sufficiently severe to create a hostile work environment and alter the conditions of Mr. Goss's employment. But the precedent of the Eighth Circuit Court of Appeals and many other courts is to the contrary. S*ee Ellis v. Houston*, 742 F.3d 307, 321 (8th Cir. 2014)

---

[4] Goss does not mention being called any racist names in his Complaint. However, in his brief, Goss mentions being called a "nigger" at Stream. Goss does not identify any of the circumstances surrounding the alleged name calling, such as who called him the name, when or how frequently it happened, or where at Stream it occurred.

8

(pattern of hostile conduct established by looking at all black officers on plaintiff's shift; officers experienced racist remarks on near daily basis in front of entire staff with supervisors actively joining in the "constant refrain of racist jokes); *see also Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2nd Cir. 1997) ("For racist comments, slurs, and jokes to constitute a hostile work environment . . . there must be a steady barrage of opprobrious racial comments."); *Stepheny v. Brooklyn Hebrew Sch. For Special Children*, 356 F.Supp.2d 248, 264 (E.D.N.Y. 2005) (holding that coworker's use of racial epithet five times over five month period was insufficient to establish hostile work environment claim); *McPherson v. NYP Holdings, Inc.*, No. 03–CV–4517, 2005 WL 2129172, at *7–8 (E.D.N.Y. Sept. 1, 2005) ("Three comments made over a period of more than two years amount only to a few isolated incidents, and therefore do not constitute a hostile work environment."); *Pagan v. New York State Div. of Parole*, No. 98 Civ. 5840, 2003 WL 22723013, at *5 (S.D.N.Y. Nov. 18, 2003) (holding that four derogatory racial comments by plaintiff's supervisor did not constitute "extremely serious" behavior necessary for hostile work environment claim); *Dorrilus v. St. Rose's Home*, 234 F.Supp.2d 326, 335 (S.D.N.Y. 2002) (granting summary judgment where supervisor four times called African–American plaintiff "El Negro" and commented that "he hate[d] black people"). Because Goss has failed to allege that the harassment affected a term, condition, or privilege of his employment, he has failed to establish the elements of his prima facie case, and dismissal of his hostile work environment claim is warranted. *See Al–Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1039 (8th Cir. 2005) ("The [Supreme] Court implores lower courts to apply the demanding harassment standards to 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'") (quoting *Oncale v. Sudowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

Accordingly, Stream's motion to dismiss is granted with respect to Goss's hostile work environment claim.

### C. *Constructive Discharge Claim*

Goss also claims that he was constructively discharged from his employment with Stream.[5] Specifically, Goss alleges that Bronkhorst's racist joke "created an instant extreme hostile and intolerable work environment," Complaint at 3, and, as a result, he had a right to quit his employment with Stream and maintain a claim for constructive discharge. Stream argues that Goss's Complaint does not state facts that are sufficiently servere or pervasive to support constructive discharge.

In order to prove a claim of constructive discharge, Goss must show that his "'employer deliberately created intolerable working conditions with the intention of forcing her to quit.'" *Sanders v. Lee County Sch. Dist. No. 1*, 669 F.3d 888, 893 (8th Cir. 2012) (quoting *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 418 (8th Cir.2010)). In other words, if "'an employee quits because she reasonably believes there is no chance of fair treatment, there has been a constructive discharge.'" *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 617 (8th Cir.2000) (quoting *Kimzey v. Wal–Mart*

---

[5] The parties analyze constructive discharge as if it were an entirely separate cause of action. The parties, however, have not cited and I have not found any case suggesting that "constructive discharge" is a distinct cause of action under either statute. The Supreme Court has recognized, however, that under Title VII an employee may bring a "hostile-environment constructive discharge claim." *Pennsylvaqnia State Police v. Suders*, 542 U.S. 129, 146 (2004). This is "an aggravated case" of a hostile work environment claim in which the plaintiff must prove that her working conditions have become "so intolerable that a reasonable person would have felt compelled to resign." *Id*.

*Stores*, 107 F.3d 568, 574 (8th Cir. 1997)). The Eighth Circuit Court of Appeals has explained that:

> to prove that a constructive discharge occurred, the plaintiff must demonstrate that a reasonable person would find the working conditions intolerable. The intolerability of working conditions is judged by an objective standard, not the employee's subjective feelings; the question is whether working conditions were rendered so objectionable that a reasonable person would have deemed resignation the only plausible alternative.

*Tatom v. Georgia–Pacific Corp.*, 228 F.3d 926, 932 (8th Cir.2000) (citations omitted). Evidence of the employer's intent may be proven "through direct evidence or through evidence that 'the employer . . . could have reasonably foreseen that the employee would quit as a result of its actions.' " *Fercello v. County of Ramsey*, 612 F.3d 1069, 1083 (8th Cir. 2010) (quoting *Wright v. Rolette County*, 417 F.3d 879, 886 (8th Cir. 2005)). Thus, the constructive discharge analysis is similar to, and ultimately more stringent than, the hostile work environment analysis:

> If the plaintiff is to succeed on such a claim, the conduct complained of must have been "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." [*Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.*, 130 F.3d 349, 354 (8th Cir.1997)] (quoting *Harris*, 510 U.S. at 21, 114 S. Ct. 367, 126 L.Ed.2d 295). Furthermore, the environment must be perceived subjectively by the victim as hostile, or the conduct cannot be said to have "actually altered the conditions of the victim's employment, and there is no Title VII violation." *Id.* (quoting *Harris*, 510 U.S. at 21–22, 114 S. Ct. 367, 126 L.Ed.2d 295) (citing *Kimzey*, 107 F.3d at 573). The Eighth Circuit has held that "the employer's actions leading to the decision to quit must have been deliberate, and taken with the intention of

11

> forcing the employee to quit." *Id.* (quoting *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981)). In the alternative, where conscious intent is absent, the intention element may nevertheless be satisfied by proof demonstrating the employee's "resignation was a reasonably foreseeable consequence" of the hostile atmosphere of the plaintiff's workplace. *Id.* (citing *Hukkanen v. Int'l Union of Operating Eng'rs Local 101*, 3 F.3d 281, 285 (8th Cir.1993)).

*Lopez v. Aramark Uniform & Career Apparel, Inc.*, 426 F.Supp.2d 914, 941 (N.D. Iowa 2006) [footnote omitted]. Thus, Goss must adequately allege not only that he suffered from a hostile or abusive work environment, but also that Stream either intended to force his resignation or, at least, should have reasonably expected that he would resign. He also has to allege that he gave Stream "a reasonable opportunity to resolve a problem before quitting." *Sanders*, 669 F.3d at 893.

As a matter of law, because Goss's hostile work environment claim has failed, his constructive discharge claim must also fail. *See Vallecillo v. United States Dep't of Housing & Urban Dev.*, 155 Fed. App'x 764, 767 (5th Cir.2005) ("We agree with the district court's reasoning that because Appellant's hostile work environment claim has failed, his constructive discharge claim must also fail."). In addition to failing to allege the existence of a hostile work environment, the Complaint's allegations, when viewed most favorably to Goss, do not suggest that Stream intended to force Goss's resignation or, at least, should have expected that he would resign. Accordingly, the Complaint fails to allege a viable claim that Goss was constructively discharged. As such, I also grant Stream's motion to dismiss on Goss's constructive discharge claim.

### D. Section 1983 Claims

Goss also raises his claims, alternatively, under 42 U.S.C. § 1983. Stream challenges the sufficiency of these claims against it. Specifically, Stream contends Goss

has failed to plead state action by it. Consequently, the issue raised by this portion of Stream's motion is whether Stream may fairly be considered acting under color of state law for the purposes of § 1983. Goss has not addressed Stream's lack of state action argument in his brief.

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 132 S. Ct. 1657, 1661 (2012) (quoting 42 U.S.C. § 1983). In order to state a claim for relief under § 1983, Goss must establish that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999); *accord Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013) ("To state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law."). Thus, "[t]he essential elements of a constitutional claim under § 1983 are (1) that the defendant acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *L.L. Nelson Enters., Inc. v. County of St. Louis, Mo.*, 673 F.3d 799, 805 (8th Cir. 2012); *see Van Zee v. Hanson*, 630 F.3d 1126, 1128 (8th Cir. 2011); *Zutu v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010); *Dennen v. City of Duluth*, 350 F.3d 786, 790 (8th Cir. 2003); *Murray v. City of Onawa*, 323 F.3d 616, 618 (8th Cir. 2003).

Courts have consistently treated the "under color of state law" element of § 1983 "as the same thing as the 'state action' required under the Fourteenth Amendment." *Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)); *accord Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295 n.2 (2001); *Sullivan*, 526 U.S. at 50 (1999); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 (1982); *Dossett v. First State Bank*, 399 F.3d

940, 947 (8th Cir. 2005); *Tancredi v. Metropolitan Life Ins. Co.*, 378 F.3d 220, 229 (2nd Cir. 2004); *Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002); *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001); *Tarpley v. Keistler*, 188 F.3d 788, 791 (7th Cir.1999); *Abraham v. Raso*, 183 F.3d 279, 287 (3rd Cir.1999. "[S]tate action requires both an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' and that 'the party charged with the deprivation must be a person who may fairly said to be a state actor.'" *Sullivan*, 526 U.S. at 50 (quoting *Lugar*, 457 U.S. at 937). Careful attention to the state action requirement serves two purposes: it "preserves an area of individual freedom by limiting the reach of federal law and federal judicial power," *Lugar*, 457 U.S. at 936; and it avoids imposing on a state responsibility for conduct which was not under its control. *Brentwood Acad.*, 531 U.S. at 295.

The Eighth Circuit Court of Appeals has observed that:

> The Supreme Court has recognized a number of circumstances in which a private party may be characterized as a state actor, such as where the state has delegated to a private party a power "traditionally exclusively reserved to the State," *see Jackson v.. Metro. Edison Co.*, 419 U.S. 345, 352, 95 S. Ct. 449, 42 L.Ed.2d 477 (1974), where a private actor is a "willful participant in joint activity with the State or its agents," *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151, 90 S. Ct. 1598, 26 L.Ed.2d 142 (1970), and where there is "pervasive entwinement" between the private entity and the state, *see Brentwood*, 531 U.S. at 291, 121 S. Ct. 924. These particular circumstances are merely examples and not intended to be exclusive. *See id*. at 295, 121 S. Ct. 924.

*Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007). The court went on to point out that:

> The one unyielding requirement is that there be a "close nexus" not merely between the state and the private party, but

14

> between the state and the alleged deprivation itself. *See Brentwood*, 531 U.S. at 295, 121 S. Ct. 924. No such nexus exists where a private party acts with the mere approval or acquiescence of the state, *see Blum v. Yaretsky*, 457 U.S. 991, 1004–05, 102 S. Ct. 2777, 73 L.Ed.2d 534 (1982), but a private entity may be considered a state actor if it "has acted together with or has obtained significant aid from state officials" in furtherance of the challenged action. *Lugar*, 457 U.S. at 937, 102 S. Ct. 2744.

*Wickersham*, 481 F.3d at 597.

As I noted above, Goss has not addressed Stream's lack of state action argument. The Complaint itself contains no allegations concerning any nexus whatsoever between Stream and any state. There are no allegations of any joint participation by state officials in Stream's conduct. Moreover, there are no allegations that would permit a reasonable fact finder to conclude that Stream's business was performing a public function that has been "traditionally the exclusive prerogative of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1005 (1982). Finally, there are no allegations which would permit a reasonable fact finder to conclude that a state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State." *Id*. at 1004. In sum, having carefully considered the Complaint, I find, as a matter of law, that Goss has failed to plead state action and, therefore, has not stated a cause of action under § 1983. Accordingly, I also grant Stream's motion to dismiss Goss's § 1983 claims.[6]

---

[6] A Fourteenth Amendment due process claim also requires a showing of "state action." *Lugar*, 457 U.S. at 924 ("Because the Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'"). Accordingly, because Goss has failed to plead state action, he has also failed to adequately plead his Fourteenth Amendment due process clause claim and Stream's motion to dismiss is also granted as to that claim.

### E. *Thirteenth Amendment Claim*

Stream also challenges the sufficiency of Goss's Thirteenth Amendment claim. Stream argues that Goss's Thirteenth Amendment claim fails because the Thirteenth Amendment does not give rise to an independent cause of action. Goss has not addressed Stream's argument in his brief.

The Thirteenth Amendment states:

> Section 1. Neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.
>
> Section 2. Congress shall have the power to enforce this article by appropriate legislation.

U.S. CONST. amend. XIII.

Under § 2 of the Thirteenth Amendment, Congress has the power "rationally to determine what are the badges and incidents of slavery, and the authority to translate that determination into effective legislation." *Jones v. Alfred H. Mayer Co.*, 392 U.S. 400, 439-40 (1968). This authority permits Congress to "'reach purely private action.'" *United States v. Sandstrom*, 594 F.3d 634, 660 (8th Cir. 2010) (quoting *United States v. Bledsoe*, 728 F.2d 1094, 1097 (8th Cir. 1984). However, the Thirteenth Amendment does not provide a private cause of action for violation of its terms and a plaintiff must proceed under an implementing statute. *See, e.g.*, *Del Elmer v. Metzger*, 967 F. Supp. 398, 402 (S.D. Cal. 1997) ("Plaintiff has pointed to no authority, and the court knows of none, allowing a plaintiff to proceed directly under the Thirteenth Amendment against private parties such as the defendants here"); *Baker v. McDonald's Corp.*, 686 F. Supp. 1474, 1480 n. 12 (S.D. Fla. 1987) ("The plaintiff may not maintain a cause of action directly under the Thirteenth Amendment for employment discrimination. Rather, the

plaintiff must base his claims on one of the implementing statutes . . . .") (internal citations omitted)), aff'd, 865 F.2d 1272 (11th Cir.1988); *Sanders v. A.J. Canfield Co.*, 635 F. Supp. 85, 87 (N.D. Ill. 1986) ("There is no direct private cause of action under the Thirteenth Amendment. Plaintiffs, instead, must resort to statutory remedies created by Congress under the power granted to it by that amendment.").

Thus, in order to state a Thirteenth Amendment claim, Goss must rely on a statute that enforces the provisions of the Thirteenth Amendment.[7] The only statutes Goss mentions in his complaint are §§ 1981, 1983, and Title VII. However, I have already concluded that Goss does not state a claim for relief under any of these statutes. Therefore, Goss's Thirteenth Amendment claim also fails. Accordingly, I grant Stream's motion to dismiss Goss's Thirteenth Amendment claim.

### F. *Breach Of Contract*

Finally, Stream seeks dismissal of Goss's breach of contract claim. Stream argues that the Complaint fails to state an actionable contract claim because it does not identify an express or implied contract. "A party breaches a contract when, without legal excuse, it fails to perform any promise which forms a whole or a part of the contract." *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998) (citing *Magnusson Agency v. Public Entity Nat'l Co.*, 560 N.W.2d 20, 27 (Iowa 1997)). The elements of a breach of contract claim under Iowa law are: (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that the plaintiff has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of

---

[7]Obviously, if Goss has brought his claim directly under the Thirteenth Amendment rather than an implementing statute, Goss fails to state a cause of action and his claim must be dismissed.

the breach. *See Iowa Mortg. Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107, 111 (Iowa 2013); *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010); *Molo Oil Co.*, 578 N.W.2d at 224; *Iowa–Illinois Gas & Elec. Co. v. Black & Veatch*, 497 N.W.2d 821, 825 (Iowa 1993). "The first three elements address the existence of a contract. The last two elements address the breach of the contract and the damages caused by the breach." *Baccam*, 841 N.W.2d at 111.

The Complaint completely fails to identify the contract at issue, the terms of that contract, and what terms of the agreement that Stream purportedly breached, other than to mention an "employment contract" twice in passing. Compl. at 4, 6. Because Goss has failed to plead an essential element of his breach of contract claim, Stream's motion to dismiss that claim is granted. See *Midwest Special Surgery, P.C. v. Anthem Ins. Cos.*, No. 4:9cv646 TIA, 2010 WL 716105, at *6 (E.D. Mo. Feb.24, 2010) (breach of contract allegations dismissed in light of the plaintiffs' failure to identify these contracts with sufficient specificity and vague references to the "terms" of the alleged contract); *Collins v. Allstate Indemn. Co.*, No. C 09-4110, 2010 WL 147969, at *2 (N.D. Cal. Jan. 12, 2010) ("Plaintiffs fail to allege which provision of the insurance policy Allstate is alleged to have breached. The absence of such allegations fails to comport with *Twombly* "); *Ashby v. SLM Corp.*, Civ. No. 08-870, 2008 WL 1945181, at *2 (D. Minn. Apr. 30, 2008) ("Plaintiff's complaint fails to state an actionable breach of contract claim, because it does not identify any contract between Plaintiff and Defendants. Furthermore, if there is such a contract, the complaint does not describe any of its terms and conditions. Finally, (and perhaps most importantly), the complaint does not describe any specific acts or omissions by Defendants that breached any terms or conditions of any contract.").

### *G. Leave To Amend*

Goss asks for leave to amend his Complaint in the event that I find any of his allegations are inadequate. Goss's brief, however, does not indicate what, if any, amendments he could make that would cure the deficiencies in the Complaint. This leads me to conclude that an opportunity to replead would be futile. Goss's request for leave to amend the Complaint is denied.

### III. CONCLUSION

For the reasons stated above, it is ordered that defendant Stream Global Services, Inc.'s motion to dismiss is granted in its entirety. The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED**.

**DATED** this 19th day of March, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA